Per Curiam.

Final judgment in each proceeding, entered after trial before Milano, H. O., on June 14, 1976, so far as *89 appealed from, reversed without costs and each proceeding remanded to the court below for retrial of the counterclaim in accordance with this opinion.
In these nonpayment summary proceedings tenants interposed counterclaims for breach of the warranty of habitability due to the reduction of services to the building by landlord, during the 17-day strike by Local 32B of the Building Service Employees International Union which began on May 2, 1976. Four of the five employees of the building did not work during the strike. The building is 171 West 79th Street, in Manhattan.
Tenant Doknovitch occupies four rooms on the eighth floor of the building, and pays a rent of $317.55 per month. Tenant Lupu occupies four rooms on the fifteenth floor of the building and pays a rent of $318.69 per month. After trial, the Hearing Officer allowed each tenant a setoff of $74.50 against the rent then due, consisting of the following: Lack of use of laundry room, $17; Garbage disposal, $34; Mail and Parcel deliveries, $8.50; Cleaning halls and lobby $5; Lack of security, $10.
As far back as 1972, this court ruled that leases "are no longer conveyances of space for a stated period; today they partake of service contracts as much as of rent contracts” (57 E. 54 Realty Corp. v Gay Nineties Realty Corp., 71 Misc 2d 353, lv to app den by App Div, NYLJ Oct. 18, 1972, p 2, col 1). In 1973, we held that a tenant had a setoff for breach of the lease for landlord’s failure to keep in operation a manually operated elevator (Levine v Ehrenburg, NYLJ, June 11, 1973, p 18, col 2). We reached the same result in 1974, for landlord’s failure to provide heat and hot water (Steinberg v Carreras, 77 Misc 2d 774), and in 1975, for landlord’s failure to remove serious violations in the tenant’s apartment (B.L.H. Realty Corp. v Cruz, 87 Misc 2d 258). Four days before the publication of our B.L.H. Realty decision, the Appellate Division, Second Department, decided Tonetti v Penati (48 AD2d 25), confirming our view that (p 29) "a lease of residential premises establishes a contractual relationship with mutual obligations and is not intended to be treated as a conveyance of an interest in realty”. Hence, to the extent that tenants suffered damage as a result of the strike and established such damage, they are entitled to relief (West, Weir & Bartel v Carter Paint Co., 29 AD2d 526; same case 25 AD2d 81, 31 AD2d 517, mod 25 NY2d 535).
We do not agree with petitioner-appellant that the foregoing *90 is not applicable to temporary conditions resulting from strikes and lockouts. Landlord was not an innocent victim of the subject strike; he was a participant in the dispute. In this posture "tenants should not be required to pay for services they [did] * * * not receive” (Matter of Concord Realty Co. v City of New York, 30 NY2d 308, 314; on remand, to the same effect sub nom. Matter of Bozart Realty Corp. v City of New York, 39 AD2d 906).
Also without merit is his argument that the housing court had no jurisdiction to pass on tenants’ claims. The record discloses no duplication of action between the court and the city’s rent agency, and tenants were entitled to appropriate relief from the court (520 East 81 St. Assoc. v Lenox Hill Hosp., 38 NY2d 525, affg 47 AD2d 513, affg, 76 Misc 2d 892, which mod and, as mod, affd 74 Misc 2d 438; Barbee v 2639 Corp., 284 App Div 298). Furthermore, contrary to petitioner’s contention, to the extent that section 235-b of the Real Property Law (warranty of habitability) applies to these proceedings, under its express provisions the exculpatory clauses in tenants’ leases are "void as contrary to public policy” (see Gleason v Gleason, 26 NY2d 28).
The argument of the Realty Advisory Board on Labor Relations, Inc., that the Hearing Officer’s decision unconstitutionally infringed on the policy of full collective bargaining is equally without merit. The record is devoid of any showing that "in motive” or "in effect” the decision interfered in the slightest with the collective bargaining between petitioner and his employees (Matter of Concord Realty Co. v City of New York, 30 NY2d 308, 314, supra). To the contrary, the proceeding was instituted after the strike was over. So long as, in reaching its decision, the court "in motive and in effect” was as neutral in relation to the strike as the circumstances permitted, its power to grant damages to the tenants for services they did not receive is not curtailed "even when caused by a strike rather than by attempted circumvention or evasion of rent controls” (Matter of Bozart Realty Corp. v City of New York, 39 AD2d 906, 907, supra).
Appellant is on firmer ground on the subject of damages. Tenants fixed no sum in their answers as the amount they claimed as a setoff against the rent due; and no such sum was fixed by them during the trial. There was no testimony by tenants, or by any witness, professional or otherwise, as to the reduced rental value of their apartments from the deprivation *91 of services (Steinberg v Carreras, 77 Misc 2d 774, supra; Levine v Ehrenberg, NYLJ, June 11, 1973, p 18, col 2, supra). There was no proof of the amount paid to the employees on strike before they went on strike, or of the total rental roll of the building, or of the allocate part of the amount theretofore paid the striking employees applicable to the tenants before the court. There was no evidence of monetary damage suffered by either tenant as a result of the strike (see, for instance, Academy Spires v Brown, 111 NJ Super 477). There was no evidence of the time spent by either tenant in substituting for the striking employees and the value of these services. Where it can reasonably be expected that evidence can be furnished from which reasonable men can derive substantial data for fixing the amount of damages, such evidence must be produced (York, Implied Warranty of Habitability, NYLJ, May 12, 1976, pp 1, 6, citing McCormick, Damages, § 26). Absent some reasonable basis for determining the damages sustained by the tenants, only nominal damages may be granted them (Randall-Smith v 43rd St. Estates Corp., 17 NY2d 99, 106; Finley v Atlantic Transp. Co., 220 NY 249; American Electronics v Neptune Meter Co., 33 AD2d 157). "Mere temporary inconveniences and annoyances to the tenant by an act of the landlord do not ordinarily constitute a breach of the covenant” of quiet enjoyment (33 NY Jur, Landlord & Tenant, § 162, p 501). Nor may damages be ascertained by mere conjecture or guess work (Broadway Photoplay Co. v World Film Corp., 225 NY 104, 109; Dunkel v McDonald, 272 App Div 267, affd 298 NY 586).
Tenants are not required to pay for services they did not receive. The resultant loss to tenants may be measured by the reduction in rental value of their apartments, or by actual monetary damage suffered by them, or by some other practical means to determine the damage to tenants just to both parties, or by some combination of these elements of damage (see Kaufman v Gordon, 24 Misc 2d 240, affd 12 AD2d 586, affd 10 NY2d 769; Dunkel v McDonald, supra). The allowances granted tenants by the Hearing Officer do not meet these criteria, are without support in the record, and are speculative (Strough v Conley, 257 App Div 1057, affd 283 NY 631; Skrine v Staiman, 30 AD2d 707, affd 23 NY2d 946).
Concur: Dudley, P. J., Hughes and Tierney, JJ.